883 So.2d 452 (2004)
Kennith W. ROBERTS
v.
The NEW ORLEANS SYMPHONY and The Continental Insurance Company.
No. 2003-CA-2206.
Court of Appeal of Louisiana, Fourth Circuit.
September 1, 2004.
*453 Frank B. Hayne, III, William T. Abbott, Jr., New Orleans, LA, for Plaintiff/Appellant, Kenneth W. Roberts.
Regel L. Bisso, Conroy Law Firm, Metairie, LA, for Defendant/Appellees, The New Orleans Symphony and Continental Casualty Company.
(Court composed of Judge DAVID S. GORBATY, Judge LEON A. CANNIZZARO, JR., Judge ROLAND L. BELSOME).
LEON A. CANNIZZARO, JR., Judge.
The plaintiffs, Sue Roberts and Floyd K. Roberts[1], appeal from a trial court judgment *454 rendered in favor of the defendants, the New Orleans Symphony and Continental Casualty Company, dismissing their suit as abandoned pursuant to La. C.C.P. art. 561.

FACTS AND PRODEDURAL HISTORY
In 1989, Kennith W. Roberts was employed by the New Orleans Symphony as a member of the stage crew at the Orpheum Theater. Having been directed to set up display tables in the lobby of the building, Mr. Roberts proceeded to take the elevator to the basement to obtain the equipment. However, when the elevator door opened, he failed to notice that the elevator car was not at the landing. Mr. Roberts stepped into the empty elevator shaft and fell to the bottom, sustaining serious injuries.
At the time of the accident, the Orpheum Corporation owned the theater and leased it to the Symphony. Under the terms of the lease agreement, the Symphony assumed liability for the condition of the premises. Continental Casualty Company issued a general liability policy of insurance to the Symphony providing coverage for accidents on the premises.
Although Mr. Roberts sought and received workers' compensation benefits on the basis of his employment with the Symphony, he filed a tort suit in 1989 naming as defendants the Symphony and the Orpheum Corporation, among others. Mr. Roberts' claim against the Symphony was based upon its contractual assumption of the building owner's liability for the condition of the premises. The trial court rendered a summary judgment dismissing the Symphony from the suit on the ground that Mr. Roberts' exclusive remedy against his employer was workers' compensation. The Symphony's dismissal was upheld on appeal in Roberts v. Orpheum Corporation, 91-2076, 91-2204 (La.App. 4 Cir. 12/15/92), 610 So.2d 1097, writ denied 93-0416 (La.4/12/93), 616 So.2d 682. Mr. Roberts' claims against the Orpheum, however, were still pending.
In 1994, the Louisiana Supreme Court rendered a decision in Stelly v. Overhead Door, 94-0569 (La.12/8/94), 646 So.2d 905. Based upon that holding, Mr. Roberts reasserted his tort claim against the Symphony by filing suit in 1995.
In Stelly, the plaintiff, a United Parcel Service (UPS) employee, was injured in a work related accident at UPS's Opelousas office. UPS had leased the premises from the building owner with an agreement assuming any liability that arose from defects on the premises. The plaintiff filed a workers' compensation claim against UPS and received benefits. He also filed a tort claim against the building owner. Later, the plaintiff amended his tort suit to add UPS as a defendant based on the employer's contractual assumption of the owner's liability for the premises. The trial court granted summary judgment in favor of UPS, finding the plaintiff's exclusive remedy against UPS was workers' compensation, and the court of appeal affirmed.
The Supreme Court reversed, holding that the plaintiff's tort action against UPS was not precluded under the pre-1990 version of La. R.S. 23:1032[2]. The Court reasoned *455 that under the terms of the lease agreement, UPS expressly assumed responsibility for the condition of the leased premises and for any and all liability resulting from defects therein. Yet, UPS also sought to benefit from the statutory immunity in La. R.S. 23:1032. If such a result was permitted, the Court concluded, the building owner would in effect be allowed to benefit indirectly from the statutory immunity of La. R.S. 23:1032. The building owner would enjoy the rights and benefits of ownership and, at the same time, have the ability to contract away all the legal obligations owed as a result of that ownership, without anyone acquiring the full range of legal obligations and duties in return. The result would deny the plaintiff full recovery for his injuries despite UPS's contractual assumption of liability for all injuries to any person. Such a result, the Court concluded, was not permissible under the pre-amendment version of La. R.S. 23:1032. Because the plaintiff's accident occurred before the effective date of the 1990 amendment, the Court refused to apply the amendment retroactively, finding that to do so would adversely affect the plaintiff's vested rights. Thus, the plaintiff was allowed to pursue the tort claim against his employer.
In his second tort suit against the Symphony and its insurer, Continental Casualty Company, Mr. Roberts alleged liability based on the Symphony's contractual assumption of the owner's liability for defects on the premises. In October 1999, the trial court ordered Mr. Roberts' 1989 and 1995 suits consolidated.
Thereafter, the defendants filed a motion to dismiss the 1995 suit on grounds of abandonment pursuant to La. C.C.P. art. 561 as no action had been taken in the case for more than three years. Following a contradictory hearing, the trial court rendered judgment dismissing the 1995 suit against the defendants with prejudice.

ASSIGNMENTS OF ERROR
On appeal, the plaintiffs assert the following four assignments of error: (1) the trial court erred in dismissing the 1995 suit as abandoned as it was consolidated with the 1989 suit against the Orpheum which was still active; (2) the trial court erred in determining that the three year period set forth in La. C.C.P. art. 561 is not subject to extension by agreement of counsel; (3) the trial court erred in failing to hold that in circumstances where two cases arise out of the same facts, and the defendants in each case are the same or are alleged to be joint tortfeasors, then any action in one case that is sufficient to prevent dismissal on the basis of abandonment is sufficient to prevent dismissal of the companion case as well; and (4) the trial court erred in dismissing the suit with prejudice.

LAW AND DISCUSSION
Article 561 of the Louisiana Code of Civil Procedure, as in effect at the time the defendants asserted their exception, provided in pertinent part:
A. (1) An action is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of three years ...
(2) This provision shall be operative without formal order, but, on ex parte *456 motion of any party or other interested person by affidavit which provides that no step has been taken for a period of three years in the prosecution or defense of the action, the trial court shall enter a formal order of dismissal as of the date of its abandonment. The order shall be served on the plaintiff pursuant to Article 1313 or 1314, and the plaintiff shall have thirty days from date of service to move to set aside the dismissal. However, the trial court may direct that a contradictory hearing be held prior to dismissal.
B. Any formal discovery as authorized by this Code and served on all parties whether or not filed of record, including the taking of a deposition with or without formal notice, shall be deemed to be a step in the prosecution or defense of an action.
Article 561 imposes three requirements on plaintiffs to avoid abandonment:
First plaintiffs must take some "step" towards prosecution of their lawsuit. In this context, a "step" is defined as taking formal action before the court which is intended to hasten the suit toward judgment, or the taking of a deposition with or without formal notice. Second, the step must be taken in the proceeding and, with the exception of formal discovery, must appear in the record of the suit. Third, the step must be taken within the legislatively prescribed time period of the last step taken by either party; sufficient action by either plaintiff or defendant will be deemed a step.
Clark v. State Farm Mut. Auto. Ins. Co., XXXX-XXXX, p. 5-6 (La.5/15/01), 785 So.2d 779, 784 (footnotes and emphasis omitted). Furthermore, the accrual of abandonment occurs automatically upon the passing of three years without a step being taken by either party, and it is effective without court order. Id., XXXX-XXXX, p. 6 (La.5/15/01), 785 So.2d at 784.
In support of their motion for dismissal, the defendants submitted the affidavit of defense counsel who averred that no action had been taken in the 1995 suit from April 17, 1995, when Mr. Roberts filed a second supplemental petition, to September 4, 1999, when he served interrogatories and a request for the production of documents on the defendants. The plaintiffs offered nothing to contradict defense counsel's affidavit. Because La. C.C.P. art. 561 is self-executing upon the expiration of three years without a step being taken by either party and is effective without court order, we find the trial court correctly determined that the 1995 suit was abandoned as of April 17, 1998. The fact that the trial court ordered the consolidation of the 1995 suit with the pending 1989 suit in October 1999 is of no consequence. The 1995 suit had been abandoned prior to the consolidation and could not be revived. Thus, the plaintiffs' first assignment of error is without merit.
The plaintiffs next argue that the three-year time period of La. C.C.P. art. 561 is not peremptive and may be extended by agreement of counsel. Specifically, the plaintiffs contend that shortly after the filing of their 1995 petition defense counsel called their attorney requesting an extension of time to file responsive pleadings, to which their attorney orally agreed. They also contend that the attorneys exchanged written correspondence in February and March 2000, evidencing that the oral extension agreement was still in effect. Such action by defense counsel, plaintiffs argue, is inconsistent with an intent to abandon the case. In support of their contention, plaintiffs' counsel cited at oral argument the case of Harrington v. Glenwood Regional Medical Center, 36,556 (La.App. 2 Cir. 12/11/02), 833 So.2d 1241, *457 wherein the Second Circuit Court of Appeal held that the plaintiffs' case was not abandoned where the defendant's attorney sent a letter requesting an extension of time to answer to the plaintiffs' counsel, who consented to an open-ended extension.
In Naccari v. Namer, 2001-2410, p. 5 (La.App. 4 Cir. 2/6/02), 809 So.2d 1157, 1160, we held that the mailing of informal correspondence cannot be construed as formal discovery and is insufficient to prevent abandonment or interruption of prescription. After reviewing the record, we find that the written correspondence between the plaintiffs' counsel and defense counsel cannot be construed as formal discovery under the Code of Civil Procedure and is insufficient to prevent the abandonment or the running of the prescriptive period.
Furthermore, we find the Harrington case is distinguishable from the case at hand. In Harrington, in addition to requesting an extension to answer, the defendant also asked the plaintiff to sign a form for the release of medical records. He complied with the request. Several months later, plaintiff's counsel wrote to defense counsel inquiring whether the defendant had obtained the medical records. Defense counsel replied that he had. When defense counsel did not comply with the requirement of subsection D of La. C.C.P. art. 1465.1[3], the plaintiff requested the documents the next day. The appellate court found that a request properly made pursuant to La. C.C.P. art. 1465.1 constituted formal discovery as authorized by the code and was distinguishable from the mere correspondence that this Court had held was not formal discovery in Naccari. The second assignment of error is without merit.
The plaintiffs further argue that because the 1989 and 1995 suits arose from the same factual circumstances and involve the same defendants, the action taken in one case should be sufficient to prevent the running of the abandonment period in the other action. In support of this argument, the plaintiffs rely on the case of Johnson v. Berg Mechanical Industries, 35,290, p. 1 (La.App. 2 Cir. 12/19/01), 803 So.2d 1067.
In Johnson, the plaintiff, an employee of Berg, was injured in a work related accident at an oil refinery. He filed both a workers' compensation claim and a tort suit alleging the same causes and facts. After a jury order was entered into the record in the tort suit in December 1996, no further action was taken in that case until November 2000 when one of the defendants moved to dismiss it on grounds of abandonment. Meanwhile, between November 1998 and September 1999, nine discovery depositions had been taken in the plaintiff's workers' compensation suit. The trial court granted the motion to dismiss the tort suit. The Second Circuit Court of Appeal reversed, finding that the depositions taken in the workers' compensation matter arising out of the same facts and attended by the defense counsel in the pending tort action were sufficient steps to interrupt the running of the abandonment period in the tort action. The Court noted that the tort defendants were careful to attend each deposition while reserving their rights to re-depose in the tort suit. The Court reasoned that the defendants derived the benefit of listening to the depositions in preparation for defending the *458 tort action and had they considered the tort action abandoned, the defense attorneys would have had no reason to attend the workers' compensation depositions. While recognizing that no step in the prosecution of the tort action took place before the trial court, the Court found that the facts demonstrated that the plaintiff did not intend to abandon his tort action. Thus, the Court concluded that dismissal on mere technicalities and form was not warranted.
In rendering its decision in Johnson, the Second Circuit acknowledged its departure from the application of La. C.C.P. art. 561 as written by narrowly limiting its decision to "the very specific and peculiar facts in this case." Id., 35,290, p. 10, 803 So.2d at 1074. The facts and circumstances in the case at hand are clearly distinguishable from those in Johnson. Here, the parties in the 1989 and 1995 suits are no longer the same since the Symphony was dismissed as a defendant in the 1989 suit. See Roberts, 91-2076, 91-2204 (La.App. 4 Cir. 12/15/92), 610 So.2d 1097, writ denied 93-0416 (La.4/12/93), 616 So.2d 682. Also, nothing in the record indicates that discovery was conducted in the 1989 suit which was sufficient to interrupt the running of the abandonment period in the 1995 suit. Thus, we decline to follow the reasoning of Johnson in this case, so the third assignment of error is without merit.
Finally, the plaintiffs contend that the trial court erred in dismissing the 1995 suit with prejudice. They contend that the Symphony, Continental and the Orpheum are alleged solidary obligors and that the interruption of prescription as to the Orpheum in 1989 interrupted prescription as to the other solidary obligors pursuant to La. C.C. art. 1799. Thus, the plaintiffs contend a dismissal without prejudice would allow them to reassert their claims against the Symphony and Continental while the 1989 suit is still pending. Defendants, on the other hand, argue that amending the judgment to dismiss the 1995 suit without prejudice would be futile because the 1989 suit is no longer pending and the one year prescriptive period to assert a tort claim has run.
The record before us indicates that the trial court rendered a partial summary judgment in the 1989 suit dismissing the Orpheum and the plaintiffs appealed. Their appeal was dismissed as the trial court failed to designate the judgment as a final appealable judgment. See Roberts v. Orpheum, XXXX-XXXX (La.App. 4 Cir. 2/2/00), 753 So.2d 916. The record, however, does not disclose if any further action was taken in the 1989 suit.
It is well settled that the dismissal of a suit on grounds of abandonment is a dismissal without prejudice. See Louisiana Central Credit Union v. LeBlanc, 98-23 (La.App. 5 Cir.1998), 721 So.2d 921, 923; D & S Builders, Inc. v. Mickey Construction Co., Inc., 524 So.2d 245, 247 (La.App. 5th Cir.1988); Pounds v. Yancy, 224 So.2d 1, 4-5 (La.App. 1st Cir.1969). Because we cannot determine from the record whether or not the 1989 suit is pending, in view of the established jurisprudence, we must amend the trial court judgment to dismiss the 1995 suit without prejudice.

CONCLUSION
Accordingly, for the reasons set forth herein, the judgment of the trial court is amended to dismiss the plaintiffs' claims against the New Orleans Symphony and Continental Casualty Company without prejudice. As amended, the judgment is affirmed.
AMENDED AND AFFIRMED
NOTES
[1] The original petition in this case was filed by plaintiff, Kennith W. Roberts, who died prior to the hearing on the defendants' motion to dismiss on grounds of abandonment. Nothing in the record indicated that following Mr. Roberts' death a succession proceeding was instituted or that a succession representative was appointed or confirmed. Thus, the district court issued a summons pursuant to La. C.C.P. art. 803 C, ordering a legal successor of the deceased to appear and substitute himself or herself as the party plaintiff in the proceeding within sixty days. Shortly thereafter, Sue Roberts and Floyd K. Roberts, the parents of the deceased, filed a supplemental and amending petition substituting themselves as plaintiffs.
[2] La. R.S. 23:1032, providing generally that an employee's exclusive remedy against his employer shall be workers' compensation benefits, was amended in 1989 by Acts No. 454, § 2, effective January 1, 1990, by adding the following:

This exclusive remedy is exclusive of all claims, including any claims that might arise against his employer, or principal or any officer, director, stockholder, partner, or employee of such employer or principal under any dual capacity theory or doctrine.
[3] La. C.C.P. art. 1465.1 D provides:

The party requesting the medical records shall provide to the party whose medical records are being sought or to his attorney, within seven days of receipt, a copy of all documents obtained by the requesting party pursuant to the release.